IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KEVIN KREY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 06 C 4173 |
| v. ) | |
| ) | HONORABLE DAVID H. COAR |
| CASTLE MOTOR SALES, INC., d/b/a ) | |
| CASTLE HONDA, and ASPEN ) | |
| MARKETING SERVICES, INC. ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Kevin Krey ("Krey" or "Plaintiff") has brought suit on behalf of a putative class of consumers against Castle Motor Sales, Inc. ("Castle") and Aspen Marketing Services, Inc. ("Aspen") (collectively "Defendants") for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq* ("FCRA"), common law Invasion of Privacy, and violations of § 2 of the Illinois Consumer Fraud Act, 815 ILCS 505/2 ("Consumer Fraud Act"). Before this Court are two motions: Plaintiff's motion for class certification under Federal Rule of Civil Procedure 23 (Doc. No. 25); and Defendant Aspen's motion for partial judgment on the pleadings under Federal Rule of Civil Procedure 12(c) (Doc. No. 58), which seeks dismissal of Plaintiff's request for injunctive remedies and all state law claims.

### FACTS

Plaintiff received a directed mailing from Defendants. Cert. Mot. Ex. A. The document was titled "PRE-APPROVED NOTICE" and stated in relevant part:

> You have been pre-approved for an auto loan. Information contained in your credit bureau report, obtained from a consumer reporting agency was used in connection with selecting you for this offer.
>
> The amount of loan may vary. Just call 800-467-7753 or log on to www.myonlineapproval.com with your personal approval code listed below to find out what your approval amount is.
>
> This offer has been extended to you because you have satisfied criteria for credit worthiness used to select consumers for this pre-approved offer.
>
> Your pre-approval is valid at Castle Honda...who has agreed to mark down all their new and used car inventory to keep within the guidelines of your pre-approval.

The document then sets out the steps necessary "to determine the pre-approval amount," and provides the contact information for both Castle and a loan approval organization. On the back of this notice, Plaintiff and the putative class members also found two additional paragraphs, printed in a small font: a "PRESCREEN & OPT-OUT NOTICE" referencing the document as a "prescreened" offer, as wells as "TERMS & CONDITIONS OF OFFER" including additional technical details and the name of the financing source ("Enterprise America").

Plaintiff alleges that Defendants accessed his credit report without permission, lacking any "permissible purpose" required by the FCRA, in willful violation of its requirements. He alleges that the purported offer contained in the mailer is "a sham, excessively vague, and totally lacking in terms," and thus has "no value beyond a solicitation for loan business." Compl. ¶ 33. As a result of this mailing, Plaintiff claims that he and the other members of the putative class were exposed to an increased risk of improper disclosure of their personal information and the possibility of identity theft. Plaintiff also claims that Defendants violated class members' privacy by having their personal information disclosed for personal profit and without lawful reason. Plaintiff alleges in his complaint that Defendants violated ICFA "by obtaining and using

and causing others to obtain and use the private credit information of plaintiff and the class members." Compl. ¶ 56. Defendant Aspen has moved for judgment on the pleadings. Plaintiff has moved for certification of the class.

## STANDARD OF REVIEW

A motion for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c) is appropriate where the material facts of a case are not in dispute, and a judgment on the merits may be achieved by focusing on the legal issues and agreed facts in the case. Wright & Miller, 5A Federal Practice and Procedure: Civil 2d § 1367 pp. 509-10 (1990). If the pleadings do not resolve all of the factual disputes, a trial is more appropriate than a judgment on the pleadings. *Id.* at 514. As in a motion to dismiss, in deciding a motion for judgment on the pleadings, the court views the facts in the light most favorable to the non-moving party. *Id.* § 1368 pp. 518-19 (1990). All of the well-pleaded allegations in the non-moving party's pleadings are taken as true. *Gilman v. Burlington Northern R.R. Co.*, 878 F.2d 1020 (7th Cir. 1989). All reasonable inferences from these facts are also given to the non-movant. *National Fidelity Life Ins. Co. v. Laraganis*, 811 F.2d 357 (7th Cir. 1987).

## ANALYSIS OF MOTION FOR JUDGMENT ON THE PLEADINGS

In its motion for judgment on the pleadings, Aspen asserts that Plaintiff fails to state a claim on the grounds that injunctive relief is not available for a FCRA action, and that the pendant state law claims are preempted by FCRA and otherwise inadequately plead.

Under FCRA, it is permissible for a credit reporting agency to furnish a consumer's credit report, and for others to use that report, only with the written consent of the consumer or for certain "permissible purposes." *See* 15 U.S.C. § 1681b. One of the designated "permissible

purposes" is to make a "firm offer of credit" to the consumer. 15 U.S.C. § 1681b(c)(1)(B)(I). The statute defines a "firm offer of credit" as "any offer of credit ... to a consumer that will be honored if the consumer is determined, based on information in a consumer report on the consumer, to meet the specific criteria used to select the consumer for the offer." 15 U.S.C. § 1681a(1). The offer of credit may be conditioned on the consumer's ability to meet "specific criteria bearing on credit worthiness or insurability." 15 U.S.C. § 1681(*l*)(1).

With respect to the motion for judgment on the pleadings, this Court has been asked to consider: (1) whether injunctive remedies are available for the FCRA claim of Count I; (2) whether the state law claims of Counts II and III are preempted by FCRA; and (3) whether the state law claims have been properly pleaded.

    a.    <u>Availability of Injunctive Remedies under FCRA</u>

Federal Courts typically retain the power to flexibly enforce laws through equity. "Unless a statute in so many words, or by a necessary and inescapable inference, restricts the court's jurisdiction in equity, the full scope of that jurisdiction is to be recognized and applied." *Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 542 (1987). However, this Court finds that the express delineation between legal remedies available to an individual through a private action, §1681n-o, and injunctive remedies enforceable through administrative enforcement, §1681s, conveys a legislative intent to limits courts' equitable powers when considering FCRA claims. *See In re Trans Union Corp. Privacy Litig.*, 211 F.R.D. 328, 340 (N.D. Ill. 2002); *see also Washington v. CSC Credit Servs. Inc.*, 199 F.3d 263 (5th Cir. 2000). For this reason, Aspen's motion for summary judgment on Plaintiff's request for injunctive remedies is GRANTED.

b.      Preemption of State Law Claims under FCRA

Section 1681t describes the relationship between FCRA and state law. The language expressly avoids general preemption of state law claims, stating that "the laws of any State with respect to the collection, distribution, or use of any information on consumers" are not generally impacted "except to the extent that those [state] laws are inconsistent with any provision of this subchapter, and then only to the extent of the inconsistency." 15 U.S.C. 1681t(a); *see King v. Retailers Nat'l Bank*, 388 F.Supp.2d 913, 916-17 (N.D. Ill. 2005) (concluding that "claims within the scope of the FCRA do not completely preempt state claim claims under a removal analysis"). However, there are limited exceptions to this rule with respect to particular subject areas of credit reporting:

> No requirement or prohibition may be imposed under the laws of any state...with respect to any subject matter regulated under...subsection (c) or (e) of section 1681b of this title, relating to the prescreening of consumer reports, [or] section 1681m(d) of this title, relating to the duties of persons who use a consumer report of a consumer in connection with any credit or insurance transaction that is not initiated by the consumer and that consists of a firm offer of credit or insurance.

15 U.S.C. §§ 1681t(b)(1)(A) & (D). These exceptions reference by subsection the obligations placed upon credit reporting agencies – and those who make use of credit reporting agencies – in the prescreening and mailing of unsolicited offers of credit. *See* §§ 1681b(c) (titled "Furnishing reports in connection with credit or insurance transactions that are not initiated by the consumer"). The factual allegations of Plaintiff's complaint fall squarely within the subject matter described in this portion of FCRA, therefore its express preemptive language applies. *See* Mot. for J. Resp. at 5 (claiming that "conduct which violates the FCRA also violates state common law and [ICFA]").

Plaintiff alleges several potential but unavailing grounds for finding that the state law claims are not preempted. Krey first cites several non-binding district court decisions that have not found dismissal of state law claims to be warranted in FCRA cases. *See* Pl.'s Resp. at 4. However, there is no indication in the text of the opinions that the question of preemption was raised in these cases, so it should come as no surprise that the matter was not ruled upon by the judges overseeing them. Plaintiff also misstates FCRA's provisions in trying to preserve his pendant actions, claiming that Section 1681t(c) "expressly authorizes state law and state enforcement of the prohibition against obtaining credit information without making a firm offer of credit or insurance as long as state law adheres to the federal definition of a firm offer of credit or insurance." *Id.* at 5 (quotations omitted). It does not. This subsection merely states that "in the enforcement and interpretation of the laws of any State governing consumer reports," the term "firm offer of credit or insurance" shall be defined according to the language of FCRA rather than state law. According to the plain language of the law, this limitation is to be placed on those state law actions that remain *after* preemption by subject matter is taken into account, and in no way requires that all credit report actions under state law be preserved.

Defendants' liability as alleged in the complaint is entirely encompassed by §1681b – insofar as their defenses win or lose based on their ability to meet their terms – therefore state law claims related to these statutory demands are preempted as "requirement[s] or prohibition[s]...imposed under the laws of any state...with respect to [these] subject matters." 15 U.S.C. § 1681t(b)(1). Defendant Aspen's motion for judgment on the pleadings with respect to Counts II and III is therefore GRANTED.

# ANALYSIS OF MOTION FOR CLASS CERTIFICATION

Under Rule 23(a), a proposed class must satisfy four conditions before a court will grant certification: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. Fed. R. Civ. P. 23(a). Defendant Aspen chiefly contends that certification should be denied on the grounds that individual questions of law and fact predominate, that potential damages would impose an undue hardship, and that Plaintiff cannot adequately represent the putative class. In addition to Rule 23(a), a proposed class plaintiff must also satisfy at least one of the conditions in Rule 23(b). Plaintiff contends that common questions predominate, and that class action will therefore be superior to other available methods of resolving the controversy in satisfaction of Rule 23(b)(3). Defendants predictably disagree, arguing that individual issues predominate over common questions of law and fact, and that individual litigation is a more fair and efficient method of adjudicating the dispute.

    a.    <u>Numerosity</u>

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Although there is no "magic number" of class members for numerosity purposes, case law indicates that when a class numbers at least 40, joinder will be considered impracticable. *Swanson v. Am. Consumer Indus.*, 415 F.2d 1326, 1333 (7th Cir. 1969). The proposed class would consist of "all persons to whom [Defendants] sent or caused to be sent material in the form represented by Exhibit A." The Plaintiff, based upon the fact that Defendants used the United States Postal Service's bulk mail rate, estimates that at least 200 of the mailers were sent to Illinois residents, while Defendants speculate that the number could reach 20,000. Numerosity is clearly satisfied.

b. <u>Commonality</u>

Under Rule 23(a)(2), there must be a question of law or fact common to the class. Rule 23(b)(3), discussed below, more stringently requires that the common questions of law or fact predominate over questions pertaining to individual class members. Commonality generally exists when the defendant has engaged in "standardized conduct" towards the members of the proposed class. *Smith v. Nike Retail Servs., Inc.*, 234 F.R.D. 648, 2006 WL 715788, at *4 (N.D. Ill. Mar. 22, 2006). Plaintiff maintains that the predominant questions of law and fact include "whether obtaining a consumer report for the purpose of transmission of the material in Exhibit A (1) qualifies under the 'firm offer of credit' exception to the FCRA, (2) is an invasion of privacy, and (3) is an unfair practice in violation of the ICFA." This Court has already determined that the state law claims are preempted and therefore the second and third issues need not be considered. However, the question of the mailing's compliance with FCRA nonetheless provides a common issue of fact and law that is applicable to all members of the putative class. This Court finds that Murray has made a sufficient showing that the class members share at least one common question, and that Plaintiff has therefore satisfied the commonality requirement.

c. <u>Typicality</u>

A plaintiff's claim is typical of a proposed class if "it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and [is] based on the same legal theory." *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cit. 1983). Further, "factual distinctions between the claims of the named class members and those of other class members" do not necessarily defeat a finding of typicality. *Id*. at 233. The issue

instead turns on whether the plaintiff's claims "have the same essential characteristics" as those of the proposed class members. *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 599 (7th Cir. 1993). As with the commonality prong, all parties potentially have a cause of action based on FCRA and the fact that they were sent the mailer of Exhibit A. Minor factual discrepancies aside, all putative class members have "the same essential characteristics," and therefore typicality has been established.

      d.      <u>Adequacy of Representation</u>

Rule 23(a)(4) requires that the named plaintiff "fairly and adequately protect the interests of the class." The plaintiff must not have claims antagonistic to or in conflict with those of other class members, and must have sufficient interest in the case's outcome to be a vigorous advocate. *See Chapman v. Worldwide Asset Mgmt.*, L.L.C., 2005 WL 2171168, at *4 (N.D.Ill. Aug. 30, 2005).

Defendants contend that Krey is inadequate because he is generally unfamiliar with the case in terms of the law, the claims, and the injuries of putative class members. *See generally* Castle Cert. Resp. at 9-11, Aspen Cert. Resp. at 5-6. Also, Defendants claim that his past willingness to settle prior to certification, repeated representation of FCRA classes, selection of purely statutory damages without knowledge of individual putative members' claims, and desire for pecuniary rewards all indicate that his only interest lies in receiving monetary compensation rather than seeing the injuries of the class redressed. For those reasons, they maintain that he cannot be relied upon to see the action through.

The Seventh Circuit recently weighed in on the relevance of the proposed representative's status as a "professional" FCRA claim representative. After noting that "[a]

person who seeks out opportunities to sue could do so in ways that injure other class members," the appellate court stated that "[n]othing about the frequency of Murray's litigation implies that she is less suited to represent others than is a person who received and sued on but a single offer." *Murray v. GMAC Mortgage*, 434 F.3d 948, 954 (7th Cir. 2006). "Repeat litigants may be better able to monitor the conduct of counsel, who as a practical matter are the class's real champions." *Id*. The fact that Krey has sued multiple defendants for committing the same alleged statutory violation "does not injure any other potential borrower." *Id*. Krey is not receiving financial compensation for serving as a class plaintiff. As is his right, he seeks statutory money damages – as will class members – for his claims. This provides no basis for finding that Krey's self-interest amounts to antagonism against the general interests of the putative class.

As for Krey's lack of awareness concerning his claims as evidenced by certain responses in his deposition, that is not fatal to certification; "as long as a class representative's interests do not conflict with those of the proposed class, she need only have a marginal familiarity with the facts of her case and need not understand the larger legal theories upon which her case is based." *Randle v. GC Services, L.P.*, 181 F.R.D. 602, 604 (N.D.Ill. 1998). Representatives are not expected to take on the burden of knowing the law, which is their attorney's responsibility, and must only have a basic understanding of the principles involved. *See, e.g., Hernandez v. Midland Credit Mgmt., Inc.,* 236 F.R.D. 406, 414 (N.D.Ill.2006); *Carbajal v. Capital One*, 219 F.R.D. 437, 442 (N.D.Ill.2004).

Finally, as to the question of choosing statutory damages rather than actual damages parsed out according to each putative members' individual experience, this is not fatal to

certification. The vast majority of claimants under the Act will likely have little desire or ability to determine their individual damages. For those that believe their own experience to have been dramatically different from other class members, and find that statutory damages are therefore inadequate, they have every right to opt out of the class and pursue their action separately. *See Hernandez v. Chase Bank USA, N.A.*, 2006 WL 3782900, at *4 (N.D. Ill. 2006). The fact that some individual claimants may select this option in no way means that the efficiencies provided by Rule 23 cannot be realized for those more typical claimants who would seek its advantages, and certainly does not mean that Krey's reasonable choice of statutory damages make him unfit to represent the class. Krey has established that he will serve as an adequate class representative.

The second consideration in determining adequacy of representation is whether plaintiff's counsel is qualified, experienced, and able to conduct the proposed litigation. *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992). Plaintiff's counsel has appeared before multiple courts in this Circuit and has an extensive practice focused on consumer protection issues. Counsel has litigated numerous FCRA cases, including *Cole v. U.S. Capital, Inc.*, 389 F.3d 719 (7th Cir. 2004); *see also Chapman*, 2005 WL 2171168, at *5 (finding the same firm was capable of providing adequate counsel in FCRA class action). Plaintiff's counsel satisfies the adequacy of representation prong.

    e.    Rule 23(b)(3)

Under Rule 23(b)(3), a plaintiff must show that common questions of law or fact predominate over individual questions, and "that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3); *Amchem Prods. v. Windsor*, 521 U.S. 591, 615 (1997). "The matters pertinent to the finding

-11-

[under Rule 23(b)(3) ] include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action." Fed. R. Civ. P. 23(b)(3). The predominance inquiry is significantly more demanding than the commonality requirement of Rule 23(a)(2). *Amchem Prods.*, 521 U.S. at 623-24. If individual issues predominate over common questions, then a class action generally is not a superior method for resolving the controversy because managing the disparate issues involved will be inefficient. *Szabo v. Bridgeport Mach., Inc.*, 249 F.3d 672, 675 (7th Cir. 2001).

Plaintiff alleges that defendants violated FCRA when they requested, furnished, and/or used the proposed class members' consumer reports without their consent and without a lawful reason for the purpose of sending them a sales solicitation. Based on a variety of different grounds, Defendants maintain that individual matters predominate and that individual suits would therefore be more efficient. In support, Defendants point to putative class members' selection of statutory versus actual damages, as well as the case-by-case calculation of individual injuries or statutory damages that would occur.

Again, the essential facts are clear and undeniably applicable to each and every putative class member. Defendants accessed consumer credit information in bulk and sent mailings to those consumers who satisfied certain criteria set by defendants. The intent in accessing the information and sending the mailing was the same for each member of the class. Each potential member of the class received the same pre-printed mailer, containing the same "pre-approval

notice" and listing the same consumer disclosures. The FCRA violation alleged is based on defendants' actions in accessing consumer credit information and sending a mailing that may or may not have met the requirements of the Act. The primary facts and legal questions are identical. Indeed, this Court has previously granted certification in similar cases, as have other courts, under the general approval of the Seventh Circuit. *See, e.g., Murray v. Sunrise Chevrolet*, No. 04-7668, Mem. Op. (N.D. Ill. Sept. 15, 2005).

Defendants nonetheless contend that individual questions predominate. As FCRA requires that plaintiffs choose between statutory damages or individual injuries, Aspen claims that Krey cannot purport to make this selection for the entire class and that, instead, the question that should be determined on an individual basis in light of each person's circumstances. This Court has already found this argument to be unconvincing. Castle has also argued that determination of whether or not the mailer was a "firm offer" or Defendants exhibited the requisite "willfulness" for FCRA liability cannot be determined on a class-wide basis. Defendant maintains that previous decisions had not limited these analyses to the "four corners" of mailers, and that this Court must therefore consider each putative class member's particular situation. This argument also fails.

The Seventh Circuit addressed these very issues in *GMAC Mortgage*. 434 F.3d 948. As to defendants' argument about the need for individualized determinations concerning the existence of a "firm offer of credit," the *GMAC Mortgage* court stated: "The statutory definition of 'firm offer' does not ask about how consumers *react*, however; it asks what the offeror has done – what terms have been extended, whether they are honored if a consumer accepts." Id. at 955. Further, the Seventh Circuit elaborated on its holding in *Cole*. "We do not read *Cole*,

however, to require a consumer-by-consumer evaluation. An offer has value to 'the consumer' if it is useful to the *normal* consumer. *Cole*'s objective was to separate *bona fide* offers of credit from advertisements for products and services, determining from '*all* the material conditions that comprise the credit product in question ... [whether it] was a guise for solicitation rather than a legitimate credit product.'" *Id.* at 955-56 (citing *Cole v. U.S. Capital, Inc.*, 389 F.3d 719, 728 (7th Cir. 2004)). If such a determination depends on the individual circumstances of the offer's recipients, then potential lenders cannot know whether it is lawful to obtain credit information at all because they will not know the idiosyncracies of each individual consumer's financial situation. To follow defendants' reasoning "would make it impossible for any potential lender to know *ex ante* whether it is entitled to obtain credit information." *Id*. at 956. Therefore, while Castle is partly correct in maintaining that this Court should consider the full context of the mailer in determining liability under FCRA, that context does not require a case-by-case analysis of each consumer that would doubtless preclude certification.

Finally, largely as an equitable matter, Defendants claim that the total amount of damages should be capped based on the disproportionately large pecuniary impact in relation to the limited injuries involved. The statute permits damages of $100 to $1,000 for FCRA violations. Because there are at least 200 and as many as 20,000 potential class members, an award could be as great as $20 million, plus attorneys' fees. While Defendants acknowledge that this last issue is customarily taken up after certification, *see GMAC Mortgage*, 434 F.3d at 954, Aspen urges the Court to consider the issue now in light of the high likelihood of settlement if Defendants are faced with an uncapped class. Defendants argue that because FCRA places no cap on statutory damages that can be awarded in a class action, there is a risk of a disproportionate – and

potentially, crushing – damage award.  By comparison, both the Truth in Lending Act, 15 U.S.C. § 1640(a)(2)(B), and the Fair Debt Collection Practices Act, 15 U.S.C. § 1692k(a)(2)(B), have damages caps.

However, the substantial nature of a potential damages award, even one based on defendants' allegedly "technical" violations of FCRA, is not a proper ground on which to deny class certification.  *GMAC Mortgage*, 434 F.3d at 953-54 ("Reducing recoveries by forcing everyone to litigate independently-so that constitutional bounds are not tested, because the statute cannot be enforced by more than a handful of victims-has little to recommend it.").  The fact that FCRA does not have a damages cap, while other consumer credit statutes do, is not germane to the Rule 23(b)(3) inquiry.  As the Seventh Circuit stated, "[t]he reason that damages can be substantial...does not lie in an 'abuse' of Rule 23; it lies in the legislative decision to authorize awards as high as $1,000 per person...combined with [defendant]'s decision to obtain the credit scores of more than a million persons." *Id.*  Although an extremely large and disproportionate award can raise due process issues, denial of class certification is not necessarily the preferred, or even the appropriate, option.  An excessive award may be reduced, if warranted, but such constitutional limits "are best applied after a class has been certified." *GMAC Mortgage*, 434 F.3d at 954 (citing *State Farm Mutual Automobile Ins. Co. v. Campbell*, 538 U.S. 408 (2003)).  The statute must be enforced in its present form, not in the form that would be most convenient to the Defendants.

This is a case where class certification presents the most efficient means of adjudicating the controversy.  The class is quite numerous but the potential recovery for each member quite small.  Indeed, it is exceedingly unlikely that many individuals would wish to go to court for a

potential recovery of $100–or that they could find counsel willing to represent them. In light of the Seventh Circuit's prior rulings, and the efficiencies provided under Rule 23, in this instance class certification is the most appropriate means of resolving this matter.

## CONCLUSION

For the foregoing reasons, Defendant Aspen's motion for partial judgment on the pleadings is GRANTED with respect to both Defendants, and Plaintiff's motion for class certification is GRANTED.

Enter:

/s/ David H. Coar
_____

David H. Coar
United States District Judge

Dated: **March 21, 2007**